**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF NEW YORK**
_____

**M.F.,** individually and on behalf
of her minor child, V.G.,

                    **Plaintiff,**

         **v.**

**NORTH SYRACUSE CENTRAL**
**SCHOOL DISTRICT et al.,**

                   **Defendants.**

_____

**5:17-cv-1385**
**(GLS/ATB)**

| **APPEARANCES:** | **OF COUNSEL:** |
|---|---|
| **FOR THE PLAINTIFF:** | |
| A.A. Castro C.L.A.N. PLLC | ANGEL A. CASTRO, ESQ. |
| 60 Broad Street, Suite 2422 | |
| New York, NY 10004 | |
| | |
| **FOR THE DEFENDANTS:** | |
| _North Syracuse Central School_ | JONATHAN B. FELLOWS, ESQ. |
| _District and Annette Speach_ | KATE I. REID, ESQ. |
| Bond Schoeneck & King, PLLC | |
| One Lincoln Center | |
| Syracuse, NY 13202 | |
| | |
| _New York State Education_ | |
| _Department_ | |
| HON. LETITIA JAMES | CHRISTOPHER J. HUMMEL |
| New York State Attorney General | Assistant Attorney General |
| The Capitol | |
| Albany, NY 12224 | |

**Gary L. Sharpe**
**Senior District Judge**

## **MEMORANDUM-DECISION AND ORDER**

## **I. Introduction**

Plaintiff M.F. brings this action—on behalf of herself and her minor son, V.G.—against the North Syracuse Central School District, its Superintendent, Annette Speach, the New York State Education Department (hereinafter "SED"), and unidentified John and Jane Doe employees pursuant to the Individuals with Disabilities Education Act (IDEA),[1] Article 89 of the N.Y. Education Law,[2] Part 200 of the N.Y. Comp. Codes & Regs.,[3] Section 504 of the Rehabilitation Act,[4] Titles II[5] and IV[6] of the Americans with Disabilities Act (ADA), and state common law. (*See generally* Compl., Dkt. No. 1.) Generally, M.F. argues that defendants have failed to provide her son a Free and Appropriate Public Education (FAPE) since 2016, (*id.* ¶¶ 3, 9), and seeks compensatory and punitive

---

[1] *See* 20 U.S.C. §§ 1400-1482.

[2] *See* N.Y. Educ. Law §§ 4401-10-C.

[3] *See* 8 N.Y.C.R.R. §§ 200.1-200.22.

[4] *See* 29 U.S.C. § 794.

[5] *See* 42 U.S.C. §§ 12131-12165.

[6] *See* 42 U.S.C. §§ 12201-12213.

damages, declaratory and injunctive relief, as well as attorney's fees and costs, (*id.* at 41-43, ¶ 12).  Pending is SED's motion to dismiss, (Dkt. No. 13), the District and Speach's motion for judgment on the pleadings, (Dkt. No. 15), and M.F.'s motion for leave to file an amended complaint, (Dkt. No. 22).  For the following reasons, SED's motion is granted, the District and Speach's motion is granted in part and denied in part, and M.F.'s motion is granted in part and denied in part.

## II. Background

### A. Facts[7]

M.F.'s son, V.G., who was sixteen years old when this action began, has been diagnosed with autism spectrum disorder and other diagnosed disabilities that make it difficult to learn in a traditional classroom setting. (Compl. ¶¶ 2, 36.)  Since V.G. entered the District in 2008, M.F. has disputed the Committee on Special Education (CSE) over the educational services necessary to provide V.G. a FAPE.  (*Id.* ¶¶ 37-53.)  In sum, M.F. alleges that defendants failed to provide V.G. a FAPE because

(a) they did not recommend a program to address the elopement

_____

[7] Unless otherwise noted, the facts are drawn from M.F.'s complaint and presented in the light most favorable to her.

3

concerns brought by [M.F.] and [V.G.'s] previous school; (b) they . . . recommended a BOCES 8:1:1 program, which was insufficient to address V.G.'s unique educational needs; (c) they did not allow [M.F.] to meaningfully participate in the [CSE] [m]eeting setting [V.G.'s] school placement; and (d) the school placement that [defendants] recommended could not provide a program to accommodate [V.G.'s] academic or health needs as mandated in V.G.'s Individualized Education Program [(IEP)].

(*Id.* ¶ 3 (internal marks omitted).) To remedy these perceived failures, M.F. and the District executed a Stipulation of Settlement Agreement (hereinafter "the Agreement") prior to the 2015 school year. (*Id.* ¶¶ 54-57; Dkt. No. 6, Attach. 1.[8]) Pursuant to the Agreement, the District was required to pay V.G.'s tuition to attend the Vincent Smith School, a private school, for the 2015, 2016, and 2017 school years. (Compl. ¶¶ 54-57.)

V.G. completed the 2015 school year at the Vincent Smith School, but the school "asked him not to return." (*Id.* ¶ 57.) Thereafter, M.F. and her current attorney—who was a non-licensed "advocate" at the time—notified the District that they were looking for another private school placement. (*Id.* ¶ 60.) Based on the District's alleged lack of cooperation, M.F. was unable to place V.G. in another private school. (*Id.* ¶¶ 60-62.)

---

[8] The Agreement is properly considered at this stage because it is integral to the complaint. *See Sira v. Morton*, 380 F.3d 57, 67 (2d Cir. 2004).

On December 6, 2016, M.F. filed a due process complaint alleging that the District failed to offer V.G. a FAPE for the 2016 school year.  (*Id.* ¶ 65.)  "On December 30, 2016, V.G. was hospitalized because, on information and belief, [he] attempted suicide and eloped from the home." (*Id.* ¶ 72.)  After the  Impartial Hearing Officer (IHO) denied the District's motion to dismiss M.F.'s complaint, the District agreed to provide V.G. with home instruction.  (*Id.* ¶ 73.)  However, the District initially failed to provide home instruction and never provided related services.  (*Id.* ¶¶ 74-75.) When the District eventually sent a tutor to V.G.'s home, the tutor read inappropriate material to V.G.  (*Id.* ¶ 76.)

In January 2017, M.F. filed a lawsuit in New York Supreme Court in Onondaga County.[9]  (*Id.* ¶ 63.)  On or about February 3, 2017, the CSE met and developed a new IEP for V.G., which recommended placement in an 8:1:1 classroom at a BOCES site and related services.  (*Id.* ¶ 77; Attach. 1 at 3.)

––––––––––––––––––––

[9] The action, (Dkt. No. 6, Attach. 2), was eventually dismissed by Supreme Court, (*id.*, Attach. 3), affirmed by the Appellate Division, Fourth Department, (*id.*, Attach. 4), and a subsequent appeal was dismissed by New York Court of Appeals, (Dkt. No. 27).  The court properly takes notice of these matters of public record at this stage.  *See Pani v. Empire Blue Cross Blue Shield*, 152 F.3d 67, 75 (2d Cir. 1998).

On February 21, 2017, M.F. requested that the IHO find that V.G.'s pendency placement[10] was governed by the Agreement, which obligated the District to pay for V.G.'s placement in a private school of M.F.'s choosing until the proceedings concluded. (Compl. ¶ 77.) In response, the District noted that it "was willing to fund V.G.'s placement at any private school in New York State that accepted [him]." (*Id.* ¶ 78.)

Nonetheless, on April 17, 2017, the IHO denied M.F.'s request for her desired pendency placement. (*Id.* ¶¶ 5, 82; Attach. 1.) M.F. appealed the IHO's pendency decision to a State Review Officer (SRO). (Compl. ¶ 6.) On June 22, 2017, the SRO affirmed the denial of M.F.'s requested pendency placement and determined that V.G.'s proper pendency placement was governed by his September 11, 2013 IEP, which included homebound instruction. (*Id.*, Attach. 2 at 11, 13.) M.F. alleges that "[]SED, through the SRO, has created precedent that prevents V.G. from obtaining a proper pendency placement during any and all disputes that may occur

_____

[10] The pendency provisions of the IDEA and N.Y. Educ. Law generally require that a child remain in his current placement during the pendency of proceedings related to identification, evaluation, or placement of the child. (Compl., Attach. 1 at 4-5.) The inquiry centers on identifying the child's current educational placement, which has been found to be the last agreed upon placement when the due process proceeding is commenced. (*Id.*)

until the end of the 2017-2018 [school year.]"  (Compl. ¶ 101.)

On July 12, 2017, the IHO issued a decision on M.F.'s due process complaint.  (*Id.* ¶ 7; Attach. 3.)  The IHO found that the District failed to provide a FAPE to V.G. from September 2016 through January 2017.  (*Id.*, Attach. 3 at 17-18.)  To remedy this violation, the IHO awarded M.F. compensatory education services as follows: 400 hours of private tutoring at a rate of $125.00 per session as well as twenty-four hours of occupational therapy, speech, and counseling services at a rate of $40.00 per session.  (*Id.* at 18-19.)  Thereafter, M.F. and the District each appealed the IHO's decision to the SRO.  (*Id.*, Attach. 4.)  Specifically, M.F. appealed the IHO's decision insofar as it found that the District had provided V.G. with a FAPE starting in January 2017, and the District appealed the award of compensatory relief.  (Compl. ¶ 8.)

On September 22, 2017, the SRO concluded that the District failed to offer V.G. a FAPE from September 2016 through February 28, 2017 but otherwise affirmed the compensatory award granted by the IHO.  (*Id.* ¶ 8; Attach. 4 at 16-17.)

M.F. challenges the correctness of the SRO's decision, (Compl. ¶ 9), and also alleges that the District failed to provide V.G. a FAPE for the

2017-2018 school year, (*id.* ¶¶ 91-96).  However, M.F. did not file a due process complaint with an IHO regarding the 2017 school year.  (*Id.* ¶ 99.) She argues that doing so would have only further delayed V.G.'s education.  (*Id.*)

In the backdrop of the above-mentioned proceedings, the District banned M.F. from its property except to attend impartial hearings, CSE meetings, or with permission from the District Superintendent,[11] (*id.* ¶¶ 65-66, 87-88); attempted to arrest M.F. when she visited the District offices to file her due process complaint on December 6, 2016, (*id.* ¶ 65); cancelled or refused to convene CSE meetings over M.F.'s objections, (*id.* ¶¶ 66, 94); prohibited M.F. from "participat[ing] in a meaningful manner [at CSE meetings] because [the District] would not address her concerns and . . . did not consider [her] position," (*id.* ¶¶ 95-96); failed to notify M.F. that it was changing V.G.'s special education placement, (*id.* ¶ 91); and failed to provide M.F. with V.G.'s bus or class schedule for the 2017 school year, (*id.*).  Additionally, at some unspecified time, the District or its

_____

[11] Although the complaint contains no specific allegations related to Speach's conduct, (*see generally* Compl.), it can be reasonably inferred that she is the District Superintendent who could permit M.F. on the premises, (*id.* ¶¶ 26, 88).

employees threatened to assault M.F., made a "bogus call to child protective services that was determined to be unfounded," and had armed guards escort M.F. to CSE meetings. (*Id.* ¶ 103.) Moreover, M.F. alleges, upon information and belief, that the District improperly intervened in another school's admissions process of V.G., (*id.* ¶ 92); "purposely attempt[ed] to elicit a negative reaction from M.F., based on the assumption that[,] because . . . she suffers from PTSD[,] . . . she will have difficulty communicating and thinking when she is stressed," (*id.* ¶ 97); and did not put aside funds into an escrow account to pay for the compensatory education services awarded by the IHO, (*id.* ¶ 98).

Meanwhile, V.G. has regressed academically and socially. (*Id.* ¶ 105.)

## B. **Procedural History**

M.F. commenced this action on December 22, 2017. (*Id.*) She asserts claims pursuant to the IDEA, (*id.* ¶¶ 106-107), Article 89 of the N.Y. Educ. Law, (*id.* ¶¶ 106, 108, 131-34), and Part 200 of the N.Y. Comp. Codes & Regs., (*id.* ¶¶ 106, 108), against all defendants.[12] She also

---

[12] It appears that M.F. asserts two claims challenging the SRO's decisions: one pursuant to § 4402 of the N.Y. Educ. Law challenging the

asserts Section 504 claims against the District and arguably against SED. (*Id.* ¶¶ 109-119.)  Additionally, M.F. asserts claims pursuant to Titles II, (*id.* ¶¶ 120-25), and IV, (*id.* ¶¶ 126-30), of the ADA against the District and Doe defendants.  Lastly, she asserts tort claims for intentional infliction of emotional "harm," (*id.* ¶¶ 135-38), against the District and negligent training and supervision, (*id.* ¶¶ 139-41), against the District and SED.

Thereafter, SED moved to dismiss pursuant to Fed. R. Civ. P. 12(b)(1) and 12(b)(6), (Dkt. No. 13), which was followed by the District and Speach moving for judgment on the pleadings pursuant to Fed. R. Civ. P. 12(c), (Dkt. No. 15).  Thereafter, M.F. filed an affidavit in opposition to defendants' pending motions.[13]  (Dkt. No. 18.)  M.F. also improvidently filed an amended complaint, which was stricken by the court.  (Dkt. No. 21.)

---

SRO's decision on the IHO's interim decision regarding V.G.'s pendency placement, (Compl. ¶¶ 133-34), and the other pursuant to the IDEA challenging the SRO's decision on the IHO's final decision, (*id.* ¶¶ 106-107).  Although it is irrelevant for reasons that follow, it should be noted that M.F. does not bring her second claim under N.Y. Educ. Law against Speach.  (*See id.* ¶¶ 131-34.)

[13] M.F.'s response disregards Local Rule 7.1(a), which requires that a memorandum of law be included with all opposition to motions. Additionally, M.F.'s attorney's affidavit violates Local Rule 7.1(a)(2), as it predominantly contains legal arguments rather than factual and procedural background.

M.F. later filed a motion for leave to file an amended complaint, (Dkt. No. 22), which defendants argue is futile, (Dkt. Nos. 25, 26).

## III.  Standards of Review

### A.  Rule 12(b)(6)

The standard of review under Fed. R. Civ. P. 12(b)(6) is well settled and will not be repeated here.  For a full discussion of the standard, the court refers the parties to its prior decision in *Ellis v. Cohen & Slamowitz, LLP*, 701 F. Supp. 2d 215, 218 (N.D.N.Y. 2010).

### B.  Rule 12(b)(1)

Under Fed. R. Civ. P. 12(b)(1), the standard of review is similar, except that the court "may refer to evidence outside the pleadings . . . [and a] plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000).[14]  Although "[t]he court must take all facts alleged in the complaint as true and draw all reasonable inferences in favor of plaintiff, . . . jurisdiction must be shown affirmatively, and that showing is not made by drawing from the pleadings inferences

---

[14] Unless otherwise noted, case quotations omit all internal quotation marks, alterations, footnotes, and citations.

favorable to the party asserting it." *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008).

## C. Rule 12(c)

It is also well settled that

[i]n deciding a Rule 12(c) motion, [the court] employ[s] the same standard applicable to dismissals pursuant to Fed. R. Civ. P. 12(b)(6). Thus, [it] will accept all factual allegations in the complaint as true and draw all reasonable inferences in [plaintiff's] favor. To survive a Rule 12(c) motion, [plaintiff's] complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face.

*Hayden v. Paterson*, 594 F.3d 150, 160 (2d Cir. 2010).

## IV. Discussion

## A. SED's Motion to Dismiss[15]

---

[15] As mentioned above, M.F. brings the following claims against SED: a claim under the IDEA, (Compl. ¶¶ 106-107), a claim under Article 89 of the N.Y. Educ. Law, (*id.* ¶¶ 106, 108, 131-34), a claim under Part 200 of the N.Y. Comp. Codes & Regs., (*id.* ¶¶ 106, 108), and a tort claim of negligent training and supervision, (*id.* ¶¶ 139-41). In an abundance of caution, the court also considers M.F.'s Section 504 claim, (*id.* ¶¶ 116-17), as brought against SED. (Dkt. No. 13, Attach. 1 at 12 & n.4.) Although SED's motion contains arguments pertaining to additional claims in the complaint, (*id.* at 13-14), the court does not consider claims that M.F., who is represented by counsel, appears to have made no effort to bring against SED. *See Hensel v. City of Utica*, 6:15-cv-374, 2016 WL 1069673, at *3 n.6 (N.D.N.Y. Mar. 16, 2016) ("While the [c]ourt will accept the allegations in the Complaint as true and draw all inferences in [p]laintiff's favor, [p]laintiff is represented by counsel and is not entitled to

*1. IDEA Claims*

For the reasons articulated in SED's brief, (Dkt. No. 13, Attach. 1 at 6-9), SED is not a proper party to M.F.'s IDEA claim challenging the failure to provide V.G. with a FAPE.  *See Avaras v. Clarkstown Cent. Sch. Dist.*, No. 15 Civ. 2042, 2017 WL 3037402, at *12 n.16 (S.D.N.Y. July 17, 2017) ("The District's receipt of federal funding allows it to be sued in federal court under the statute, but [SED]—which is not responsible for the day-to-day formulation of students' IEPs—is not the proper party to a suit challenging an administrative determination as to the sufficiency of the IEPs provided by the local education agency."); *B.J.S. v. State Educ. Dep't/Univ. of N.Y.*, 699 F. Supp. 2d 586, 599 (W.D.N.Y. 2010) ("[T]he controversy over the propriety of the IEP and whether it deprives the student of a[] FAPE remains one between the student, or, as here, the student's parent[], and the local educational agency because, under the [IDEA], the primary responsibility for formulation and implementation of a[] FAPE and IEP is that of the relevant educational agency, in this case the [s]chool [d]istrict, not [SED].").  Accordingly, this portion of SED's motion is

_____

 the same liberality afforded to *pro se* litigants.").

13

granted and all IDEA claims against SED are dismissed.

### 2.    Section 504 Claims

To state a Section 504 claim, a plaintiff must allege, among other things, that defendants excluded him from participation in or enjoyment of an applicable program, solely by reason of his disability.  *See Loeffler v. Staten Island Univ. Hosp.*, 582 F.3d 268, 275 (2d Cir. 2009).

Although M.F. alleges conduct that, as discussed below, may be sufficient to infer a violation of Section 504 by the District, the only allegations regarding SED are set forth in entirely conclusory terms. (Compl. ¶¶ 116-18.)  That is, M.F. merely asserts that "[b]y the acts and failures of . . . [SED,] . . . [SED] otherwise subjected . . . V.G. to discrimination under programs and activities of the [District,]" and "[s]uch discrimination was solely by reason of . . . V.G.'s disability."  (*Id.* ¶ 116.) However, the complaint is devoid of any substantive allegations concerning SED's alleged conduct that would amount to discrimination based upon V.G.'s disability.  (*See generally id.*)  The court need not accept M.F.'s "legal conclusions masquerading as factual conclusions."  *Smith v. Local 819 I.B.T. Pension Plan*, 291 F.3d 236, 240 (2d Cir. 2002).

As such, this portion of SED's motion is also granted, and M.F.'s

14

Section 504 claim against SED is dismissed for failure to state a claim.

### 3. State Law Claims

Lastly, because SED is a state agency, (Compl. ¶ 23), the Eleventh Amendment bars all of M.F.'s state law claims against SED. *See Y.D. v. N.Y.C. Dep't of Educ.*, No. 14CV1137, 2016 WL 698139, at *3-4 (S.D.N.Y. Feb. 19, 2016) (dismissing IIED claim against SED based on Eleventh Amendment); *M.M. ex rel. JM v. N.Y.C. Dep't of Educ.*, No. 9 Civ. 5236, 2010 WL 2985477, at *6 (S.D.N.Y. July 27, 2010) (dismissing N.Y. Educ. Law claim against SED based on Eleventh Amendment).

Although M.F. does not argue that any exception to the Eleventh Amendment bar applies, (Dkt. Nos. 18, 22, Attach. 1), it should be noted that M.F.'s request for declaratory and injunctive relief, (Compl. ¶ 12 & 41-43), does not save her claims. *See Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 106 (1984) (holding exception to Eleventh Amendment bar articulated in *Ex parte Young*, 209 U.S. 123 (1908) inapplicable to actions against state officials on basis of state law); *Monserrate v. N.Y. State Senate*, 695 F. Supp. 2d 80, 97 (S.D.N.Y. 2010) ("It is well settled that federal courts may not grant declaratory or injunctive relief against a state agency based on violations of state law.").

Accordingly, this portion of SED's motion is also granted and all of the state claims asserted against it are dismissed.

## B.  The District's Motion for Judgment on the Pleadings

### 1.  *Speach's Conduct*

The complaint does not contain any factual allegations referencing Speach, except to posit that she is the District Superintendent.  (Compl. ¶ 26.)  As such, the District moves for her dismissal.  (Dkt. No. 15, Attach. 1 at 17.)  In light of the lack of allegations that can be reasonably attributed to Speach, her dismissal is appropriate.  *See Dove v. Fordham Univ.*, 56 F. Supp. 2d 330, 335 (S.D.N.Y. 1999) ("It is well-settled that 'where the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted.'") (quoting *Morabito v. Blum*, 528 F. Supp. 252, 262 (S.D.N.Y. 1981)); *cf. McAvoy v. DeMarco*, No. 14–CV–6293, 2015 WL 1802601, at *5 (E.D.N.Y. Apr. 16, 2015) (finding no basis for defendant's personal involvement where he was not named in the body of the complaint).[16]

_____

[16] Given that the complaint fails to allege any facts related to Speach, other than that she is the District Superintendent, and because M.F.'s responsive papers do not articulate a reason that failure does not

In response, M.F.'s attorney argues only that "claims against . . . Speech [sic], *in her official capacity*, should . . . survive." (Dkt. No. 18 ¶ 15 (emphasis added).) "Official-capacity suits . . . generally represent only another way of pleading an action against an entity of which an officer is an agent." *Kentucky v. Graham*, 473 U.S. 159, 165-66 (1985). That is, "an official-capacity suit is, in all respects other than name, to be treated as a suit against the entity." *Id.* at 166. As a result, a court may dismiss an official-capacity claim as unnecessary or redundant where a similar claim is asserted against the entity which an officer is an agent. *See Sheriff's Silver Star Ass'n of Oswego Cty., Inc. v. County of Oswego*, 56 F. Supp. 2d 263, 265 n.3 (N.D.N.Y. 1999). Given that M.F. asserts claims that may subject the District to liability, her official-capacity claims against Speach are redundant.[17] Accordingly, this provides another basis

_____

also foreclose her state law claims against Speach, they too are dismissed. *See Smith v. Doe*, No. 10 Civ. 3136, 2010 WL 4964394, at *1 (S.D.N.Y. Dec. 1, 2010); *Morgan v. County of Nassau*, 720 F. Supp. 2d 229, 235 (E.D.N.Y. 2010).

[17] Although the above-cited cases generally relate to § 1983 claims, their reasoning is no less persuasive here.

to dismiss and this portion of the District's motion is granted.[18]

### 2. Pre-November 10, 2015 Conduct

As part of the November 10, 2015 Agreement, M.F. agreed to withdraw her due process complaint with prejudice and "release[d] the District from any claims that could be asserted against the District arising out of or relating to a [FAPE] for [V.G.] . . . prior to and including the date of the execution of th[e] Agreement."  (Dkt. No. 6, Attach. 1 ¶ 11.)  This release appears to bar any of M.F.'s claims based on conduct occurring prior to November 10, 2015.  *See Consolidated Edison, Inc. v. Northeast Util.*, 332 F. Supp. 2d 639, 647 (S.D.N.Y. 2004) (holding, under New York law, "[w]here a release is unambiguous, it must be enforced").

In response, M.F. argues that the District should not be allowed to rely on this release "because it breached that contract and has unclean hands."  (Dkt. No. 18 ¶ 9.)  However, M.F. fails to develop this argument or point the court to any legal authority that would save her claims under the circumstances.  Notably, her argument that the District breached the

---

[18] Furthermore, M.F.'s Section 504 claim against Speach fails because "[i]ndividuals may not be held liable, in either a personal capacity or an official capacity, under Section 504."  *Davis v. N.Y. State Office of Mental Health*, No. 05–CV–5599, 2009 WL 5178440, at *7 (E.D.N.Y. Dec. 31, 2009).

Agreement is the same claim that she made in her state court complaint, which was dismissed and is now final. (Dkt. No. 25 at 7.) As such, given the unambiguous release in the Agreement, all IDEA claims arising prior to the execution of the Agreement are barred. And, in any event, M.F. failed to respond to the District's facially-meritorious argument that any IDEA claims relating to the District's alleged failure to offer V.G. a FAPE prior to execution of the Agreement are untimely based on the IDEA's two-year statute of limitations for filing a due process complaint. *See* 20 U.S.C. § 1415(f)(3)(C); *see also Johnson v. Lew*, No. 1:13–CV–1072, 2015 WL 4496363, at *5 & n.6 (N.D.N.Y. July 23, 2015) ("In this District, when a non-movant willfully fails to oppose a legal argument asserted by a movant, the movant's burden with regard to that argument is lightened, such that, in order to succeed on that argument, the movant need only show that the argument possess[es] facial merit, which has appropriately been characterized as a modest burden.").

Accordingly, this portion of the District's motion is granted.

3.    *2016 School Year*

M.F. did not appeal the IHO's award of compensatory education for the 2016 school year. (*See* Compl., Attach. 4 at 16 n.13.) As such, the

District argues that M.F. "failed to exhaust any claim regarding the sufficiency of the compensatory education awarded by the IHO and such claim has been abandoned." (Dkt. No. 15, Attach. 1 at 11 (citing *Taylor v. Vt. Dep't of Educ.*, 313 F.3d 768, 790 (2d Cir. 2002)).) In response, M.F. appears to concede that her IDEA claims do not relate to the 2016 school year:

> [w]hether or not the 400 plus hours of compensatory education for the undisputed denial of FAPE during September 2016 to end of February 2017 was sufficient is not at issue here. The issue is whether the denial of FAPE was actually more than two (2) years which would require compensatory education in at least triplicate of what has already been awarded.

(Dkt. No. 18 ¶ 10.) Accordingly, M.F.'s IDEA claims relating to the 2016 school year are deemed abandoned, and this portion of the District's motion is granted. *See Jackson v. Fed. Express*, 766 F.3d 189, 196 (2d Cir. 2014) ("Where abandonment by a counseled party is not explicit but such an inference may be fairly drawn from the papers and circumstances viewed as a whole, district courts may conclude that abandonment was intended.").

### 4. *2017 and Subsequent School Year*s

M.F. seeks an award of "at least $365,000.00 per year for each and

every year until V.G. reaches [twenty-two] years of age."  (Compl. at 42.)
Insofar as M.F. seeks relief under the IDEA for the 2017, 2018 or any
school year beyond that, the District argues that such claims must be
dismissed because M.F. has not filed due process complaints challenging
the IEPs adopted for those school years.  (Dkt. No. 15, Attach. 1 at 12
(citing Compl. ¶ 99).)

Indeed, it is well-settled that the IDEA requires an aggrieved party to
exhaust administrative remedies by filing a due process complaint before
bringing a civil action in federal court.  *See Polera v. Bd. of Educ. of
Newburgh Enlarged City Sch. Dist.*, 288 F.3d 478, 488 (2d Cir. 2002).
Moreover, a plaintiff cannot seek relief under the IDEA for future school
years.  *See Streck v. Bd. of Educ. of the E. Greenbush Cent. Sch. Dist.*,
642 F. Supp. 2d 105, 108 (N.D.N.Y. 2009) ("[T]he IDEA allows parents to
recover only actual, not anticipated, expenses[.]").

In response, M.F. argues that she should be excused from the
general exhaustion requirements because filing a due process complaint
for the 2017 school year would be futile.  (Dkt. No. 18 ¶¶ 5, 11.)

To be sure, "if plaintiffs can demonstrate that there is no relief
available to them through the administrative process, they may avail

themselves of the futility or inadequacy exceptions to the exhaustion requirement." *Taylor*, 313 F.3d at 790. "[R]elief available [means] relief for the events, condition, or consequences of which the person complains, [even if] not necessarily relief of the kind the person prefers." *Id.* Furthermore, "[t]he plaintiff bears the burden of demonstrating futility." *Id.*

Here, M.F.'s attorney asserts in his affirmation that "[s]ince [M.F.] would be bringing the same claim for pendency placement for the 2017 school year, it follows that filing administrative due process claims would prove futile because no one will consider the issue without the prior decisions being overturned by this [c]ourt." (Dkt. No. 18 ¶ 5.) This theory is difficult to follow. M.F. fails to explain why an IHO would not consider a due process complaint filed in regards to V.G.'s IEP for the 2017-2018 school year—regardless of the IHO's previous decision on V.G.'s pendency placement during those proceedings, which have concluded. Nonetheless, even if the specific relief M.F. prefers is unavailable, that does not mean that relief is unavailable to her. *See Taylor*, 313 F.3d at 790.

Additionally, M.F.'s attorney asserts that

the treatment of [M.F. and V.G.] by [the District] and [its] staff was

so egregious and malicious that it should be determined that [the District] is not capable of providing FAPE to V.G. and their relationship has deteriorated to the point that further interaction would only prove harmful to [M.F. and V.G.]  Moreover, [the District] has not even complied with the current decisions awarding compensatory education and obtaining another award would not help [M.F. and V.G.] when [the District] will not comply.

(*Id.* ¶ 11.)  First, the complaint does not allege that the District has failed to comply with the SRO's decision awarding compensatory education, except to the extent that M.F. alleges that she believes that the District has not put aside funds for V.G.'s compensatory education in an escrow account. (Compl. ¶ 98.)  Second, the court agrees with the District that just because M.F.'s challenge to V.G.'s 2016 IEP was unsuccessful, it does not follow that she could not subsequently challenge V.G.'s IEP for the 2017 or future school years.  (Dkt. No. 19 at 5-6.)  Under the IDEA, the District is obligated to review a student's placement annually and prepare a new IEP for each school year.  *See* N.Y. Educ. Law § 4402(2); 8 N.Y.C.R.R. § 200.4(f).  Considering that V.G.'s IEP is required to be revisited each year, the court will not speculate regarding whether the District will offer V.G. a FAPE in the future.  Likewise, given that prospective relief is unavailable under the IDEA, the court will not speculate regarding whether the District will comply with any awards yet to be issued.  *See Streck*, 642

F. Supp. 2d at 108.

Ultimately, M.F. fails to meet her burden of demonstrating futility. *See Taylor*, 313 F.3d at 790. As such, M.F.'s IDEA claims related to the 2017 school year, as well as any subsequent school year for which she has not filed a due process complaint, are dismissed for failure to exhaust her administrative remedies.

### 5. Timeliness

The District also argues that, to the extent that M.F. seeks review of the SRO's decision regarding V.G.'s pendency placement, (Compl. ¶ 133), that claim is untimely. (Dkt. No. 15, Attach. 1 at 17.) In response, M.F.'s attorney asserts—again, pointing to no legal authority—that it is unclear whether N.Y. Educ. Law § "4404(3)(b) [sic]" requires a party to appeal an SRO's interim decision within four months of its issuance or within four months of the final decision on the matter, but, in any event, raising the issue in M.F.'s closing brief and final appeal to the SRO makes the claim timely. (Dkt. No. 18 ¶ 14.)

To be sure, an appeal of an SRO's determination must be commenced within four months. *See* N.Y. Educ. Law § 4404(3)(a). There is nothing ambiguous about the statute's requirement that "[a]ny final

determination *or order* of a state review officer . . . may only be reviewed in a proceeding brought in the supreme court . . . or in United States district court" and "[a]ny such proceeding shall be commenced within four months *after the determination to be reviewed* becomes final and binding on the parties." *Id.* (emphases added). Here, the interim order regarding pendency was the "determination to be reviewed," and the statute expressly includes that its mandates apply to any "order," as well as final determinations. *Id.* As such, the SRO's order regarding V.G.'s pendency placement became final and binding when it was issued on June 22, 2017. (Compl. ¶¶ 6, 133.) M.F. fails to explain how raising the pendency issue in her closing arguments or final appeal to the SRO was procedurally proper or would extend her time to file an action in federal court appealing such a decision. Indeed, the SRO's final decision specifically refused to consider his prior order regarding pendency and, instead, noted that M.F. could seek review of that determination in state or federal court. (Compl., Attach. 4 at 9-10.) At the time of the SRO's final decision, the filing window for M.F. to challenge the order on pendency was still open. However, M.F. failed to commence this action until December 22, 2017, more than four months after the SRO's order regarding pendency. (Compl.) Therefore,

25

M.F.'s claim seeking review of the SRO's order on V.G.'s pendency placement is untimely. As such, this portion of the District's motion is granted.

### 6. ADA and State Law Claims

The District next argues that M.F.'s ADA and state law claims are precluded by the doctrine of *res judicata*, in light of a state court judgment involving the same allegations giving rise to her current claims. (Dkt. No. 15, Attach. 1 at 15-17.)

It is well-settled that a federal court must give full faith and credit to prior state court adjudications. *See Allen v. McCurry*, 449 U.S. 90, 95-97 (1980). As such, federal courts are required to give the same "preclusive effect to issues decided by state courts" as the state courts would themselves afford, and therefore federal courts look to relevant state law in determining whether *res judicata* or collateral estoppel applies to a state court judgment. *Id.* at 95; *see Boomer v. Bruno*, 134 F. Supp. 2d 262, 267 (N.D.N.Y. 2001) ("The [c]ourt must look to New York law in order to determine what preclusive effect should be given to" a New York State judgment). In New York, "once a claim is brought to a final conclusion, all other claims arising out of the same transaction or series of transactions

are barred, even if based upon different theories or if seeking a different remedy." *O'Brien v. City of Syracuse*, 54 N.Y.2d 353, 357 (1981).

The District convincingly argues that the same allegations that make up M.F.'s ADA and tort claims in these proceedings were the predicates for her claims in the state court proceedings. (Dkt. No. 15, Attach. 1 at 16-17 (citing Dkt. No. 6, Attach. 2).) In the face of these facially-meritorious arguments, M.F.'s attorney admits that the state court action "involves similar facts," but argues (1) that "this [c]ourt does not have to give full faith and credit to a decision by a state court that is still being litigated" and (2) it would "severely prejudice [M.F.] to dismiss current claims that could not have been brought previously because of exhaustion requirements." (Dkt. No. 18 ¶¶ 8, 13.)

M.F.'s first argument fails because the Appellate Division, Fourth Department and New York Court of Appeals have affirmed the underlying state court judgment. (Dkt. No. 6, Attachs. 3, 4; Dkt. No. 27, Attach. 1.) M.F.'s second argument fails because it is undeveloped and cites to no legal authority. That is, M.F. fails to explain what or how unspecified "exhaustion requirements" would allow her to file an action in state court but prohibit her from filing her ADA or tort claims in federal court. Given

27

that M.F. does not contest that her claims arise out of the same series of transactions as those giving rise to her state court action, as revealed by a review of her state court complaint, (Dkt. No. 6, Attach. 2), this portion of the District's motion is granted.  *See O'Brien*, 54 N.Y.2d at 357; *Johnson*, 2015 WL 4496363, at *5 & n.6.

7.    *Section 504 Claims*

The District also argues that M.F.'s Section 504 claims must be dismissed because there are no allegations of the District's bad faith or gross negligence.  (Dkt. No. 15, Attach. 1 at 13-15.)

"Since Section 504 relief is conditioned on a showing of discrimination, it requires something more than proof of a mere violation of IDEA—*i.e.*, more than a faulty IEP."  *Gabel ex rel. L.G. v. Bd. of Educ. of Hyde Park Cent. Sch. Dist.*, 368 F. Supp. 2d 313, 334 (S.D.N.Y. 2005); *see J.D. v. Pawlet Sch. Dist.*, 224 F.3d 60, 70 (2d Cir. 2000).  That is, "a plaintiff must demonstrate that the school district acted with bad faith or gross misjudgment."  *Butler v. S. Glens Falls Cent. Sch. Dist.*, 106 F. Supp. 2d 414, 420 (N.D.N.Y. 2000).  "The plaintiff is not required to show personal animosity or ill will.  Rather, intentional discrimination may be inferred when a policymaker acted with at least deliberate indifference to

28

the strong likelihood that a violation of federally protected rights will result from the implementation of the challenged policy or custom." *Id.*

To be sure, the complaint alleges that District violated Section 504 by "fail[ing] to accommodate V.G.'s disability [insofar as the District] refused to offer a school placement that addressed his elopement issues or need for counseling," (Compl. ¶ 113), and "[b]y failing to provide M.F. with an appropriate placement for V.G. and FAPE to V.G. for the 2016-2017 and 2017-2018 school years," (*id.* ¶ 115). M.F.'s attorney's response merely asserts that "[M.F.'s] Section 504 claims must survive because [the District] acted with gross negligence and reckless indifference for at least six (6) months," (Dkt. No. 18 ¶ 12), in apparent reference to the District's failure to offer V.G. a FAPE, as determined by the SRO, from September 2016 to February 2017. To the extent that M.F. relies on these allegations, she fails to state a Section 504 claim. *See J.D.*, 224 F.3d at 70; *Gabel ex rel. L.G.*, 368 F. Supp. 2d at 334; *see also Streck v. Bd. of Educ. of the E. Greenbush Sch. Dist.*, 280 F. App'x 66, 68 (2d Cir. 2008) (affirming dismissal of ADA and Section 504 claims where student was "afforded access to an existing program," but the "content and sufficiency of the IEP" were challenged).

However, other allegations of the complaint, viewed in the light most favorable to M.F., arguably state a Section 504 claim. Specifically, M.F. alleges that the District made it difficult for M.F. to participate in the development of an appropriate IEP for V.G., (Compl. ¶¶ 65-66, 87-88, 94-96, 103), stymied V.G.'s ability to access the educational program crafted in his IEP, (*id.* ¶ 91), and either delayed, or failed to provide, agreed upon educational services to V.G., (*id.* ¶¶ 73-75). Such allegations are sufficient to demonstrate the District's bad faith or deliberate indifference at this stage. *Cf. Gabel ex rel. L.G.*, 368 F. Supp. 2d at 336 (holding that "[a d]istrict's recommendation of an 8:1:1 program for [a student] after [a] CSE had recommended a 12:1:1 program may in itself constitute the type of gross negligence or reckless indifference Section 504 is meant to address"); *Butler*, 106 F. Supp. 2d at 421 (holding that school officials' development of IEPs that were inappropriate for student's educational needs and failure to provide student with certain special education services "may constitute deliberate indifference to the strong likelihood that plaintiff's rights were being violated").

As such, this portion of the District's motion is denied with leave to renew.

**C.    M.F.'s Motion for Leave to File an Amended Complaint**[19]

   *1.    Proposed Amendments*

M.F.'s proposed amended complaint seeks to add four new claims[20]:

(1) "Count I A" alleges that SED has engaged in systemic violations of the

IDEA, (Dkt. No. 22, Attach. 2 at 39-40[21]); (2) "Count I B" alleges that the

District and Speach have engaged in systemic violations of the IDEA, (*id.*

at 40-42); (3) "Count III A" alleges that SED violated 42 U.S.C. § 1983 "by

failing to implement adequate policies, procedures, protocols, training, and

oversight so as to ensure compliance with the IDEA, Section 504, and New

---

[19] M.F. again runs afoul of the Local Rules, which require a motion to amend to "set forth specifically the proposed insertions and deletions of language and identify the amendments in the proposed pleading, either through the submission of a redline/strikeout version of the pleading sought to be amended or through other equivalent means." N.D.N.Y. L.R. 7.1(a)(4). Here, although M.F. purports to highlight all additions to her original complaint, a review of the proposed amended complaint reveals that she has changed allegations without specifically identifying such changes. (*See, e.g.*, Compl. ¶¶ 117-18; Dkt. No. 22, Attach. 2 ¶¶ 141-42.)

[20] The proposed amended complaint also apparently seeks to add two new defendants, Ryan Wall and Kerry Boylan. (Dkt. No. 22, Attach. 1.) However, neither Wall or Boylan are mentioned in the proposed amended complaint. (*See generally id.*, Attach. 2.) Accordingly, the court deems this request to be made in error and denies it.

[21] This citation refers to the CM/ECF-generated page numbers, given that M.F. duplicates paragraph numbers and lists them out of order. (*See generally* Dkt. No. 22, Attach. 2.)

York State law," (*id.* ¶¶ 168-69); and (4) "Count III B" alleges that the District violated 42 U.S.C. § 1983 by "(a) adopting inappropriate policies and procedures; (b) engaging in a widespread practice that constituted custom or usage; (c) failing to supervise and train their employees to such an extent that it amounts to deliberate indifference to the rights of those who come into contact with such employees, and (d) failing to adopt appropriate policies and procedures; with respect to" the development of IEPs, special education services, and related services, (*id.* ¶¶ 170-73). Otherwise, the claims in the proposed amended complaint seem the same as the claims in the complaint.[22]  (*Compare id.*, *with* Compl.)

Additionally, the proposed amended complaint contains the following new factual allegations: V.G. has recently been diagnosed with Grave's Disease, (Dkt. No. 22, Attach. 2 ¶¶ 2, 60), the CSE did not afford adequate consideration to V.G.'s symptoms, including "elopement, anxiety, bullying, refusal to leave his room, etc." during the 2013-2014, 2014, 2015, 2016, and 2017 school years, (*id.* ¶ 3); the District did not attempt to implement the program recommended by the CSE for the 2017 school year, (*id.*); the

---

[22] The proposed amended complaint also purports to add a new "Count I C"; however, that claim is merely a rewording of M.F.'s prior IDEA claim against the District and Speach.  (*Id.* at 42.)

32

IEP prepared for V.G. for the 2017 school year was based on insufficient evaluative data and failed to adequately address M.F.'s concerns about elopement, mood swings, hyperactivity, and other symptoms, (*id.* ¶¶ 93-97); and the District "never actually attempted to implement [the 2017] IEP and, instead, enrolled V.G. at the North Syracuse Junior Highschool [sic] where they have faked his attendance records to collect funds allocated toward V.G.'s special education," (*id.* ¶ 118).

In regards to SED, the proposed amended complaint adds allegations that SED failed to provide a mechanism for parents to challenge the record submitted as a part of the state-level administrative review process, which prejudiced M.F. and other parents when the District fails to submit a sufficient record. (*Id.* at 34-36.)

### 2. Futility

Leave to amend a pleading pursuant to Fed. R. Civ. P. 15(a) may be denied if the amendment would be futile. *See Knife Rights, Inc. v. Vance*, 802 F.3d 377, 389 (2d Cir. 2015). An amendment is futile if the proposed complaint, or any of its claims, could not survive a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6). *See Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002); *see also Hyatt v. LaValley*,

9:16-cv-528, 2018 WL 4473389, at *4, *5-7 (N.D.N.Y. Aug. 2, 2018) (denying motion to amend complaint due to futility where proposed claims could not survive a motion to dismiss).

All defendants argue that the proposed amended complaint is futile because it fails to remedy the issues requiring dismissal of the claims from the original complaint, and the claims that it seeks to add cannot withstand a motion to dismiss.  (Dkt. Nos. 25, 26.)  For the following reasons, the court agrees with that assessment, except when it comes to M.F.'s Section 504 claim against the District, for the reasons discussed above, *see* Part IV.B.7 *supra*, as well her § 1983 claims against the District and systemic violation of the IDEA claim against SED, for the reasons discussed below, *see* Parts IV.C.2.c,e *infra*.

### a. *Proposed Claims against Speach*

The proposed amended complaint does not add any new factual allegations regarding Speach.  (*See generally* Dkt. No. 22, Attach. 2.)  As such, M.F. has not remedied the problems identified above requiring her removal as a party.  To the extent that M.F. proposes to add a § 1983 claim against Speach, it fails to allege Speach's personal involvement in

34

the alleged constitutional deprivation.  *See Ashcroft v. Iqbal*, 556 U.S. 662, 676 (2009) ("Because vicarious liability is inapplicable to . . . § 1983 suits, a plaintiff must plead that each [g]overnment-official defendant, through the official's own individual actions, has violated the Constitution."); *Colon v. Coughlin*, 58 F.3d 865, 873 (2d Cir. 1995) ("It is well settled in this Circuit that personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983.").  As such, this portion of M.F.'s motion is denied as futile.  *See Vance*, 802 F.3d at 389; *Lucente*, 310 F.3d at 258; *Hyatt*, 2018 WL 4473389, at *4, *5-7 *.

      b.     *Systemic Violation Claim against the District*

For the reasons set forth by the District, (Dkt. No. 25 at 15-16), M.F.'s proposed claim alleging a systemic violation of the IDEA against it, (Dkt. No. 22, Attach. 2 at 40-42), is an improper attempt to M.F.'s exhaustion requirements.  *See, e.g.*, *Cave v. E. Meadow Union Free Sch. Dist.*, 514 F.3d 240, 250 (2d Cir. 2008) (holding complaints seeking relief for a single student do not allege a "system-wide violation of the IDEA's mandates" absent allegations of "a district-wide policy of discrimination against [disabled] students" or "that the administrative process is so

structurally tainted that [plaintiffs] would not have been afforded a fair and impartial forum to present their claims"); *Reyes v. Bedford Cent. Sch. Dist.*, 16-cv- 2768, No. 16-CV-2768, 2017 U.S. Dist. LEXIS 159568, at *32 (S.D.N.Y. Sept. 27, 2017) ("Plaintiff points to no other circumstances, other than her own, in which a child covered by the IDEA was deprived of special education benefits because of a policy or practice of the [d]istrict[.]"); *O.M. ex rel D.M. v. Bd. of Educ. of the Wayne Cent. Sch. Dist.*, No. 6:14–cv–6487, 2015 WL 3952601, at *6-7 (W.D.N.Y. June 29, 2015) (dismissing systemic violation claim where plaintiff parent's substantive allegations focused on district's alleged failures regarding her child "individually as opposed to systemic failures affecting other disabled students in the [d]istrict" and parent "plainly d[id] not bring this action on behalf of any individual other than her son"); *Kalliope R. ex rel Irene v. N.Y. State Educ. Dep't*, 827 F. Supp. 2d 130, 138 (E.D.N.Y. 2010) ("The systemic violations exception applies where a plaintiff challenges the framework and procedures for assessing and placing students in appropriate educational programs . . . or [where the] nature and volume of complaints [are] incapable of correction by the administrative hearing process."); *Mr. & Mrs. "B" v. Bd. of Educ. of the Syosset Sch. Dist.*, No.

96–CV–5752, 1998 WL 273025, at *4 (E.D.N.Y. Jan. 15, 1998) ("[T]his case is not a class action directed at remedying systemic or structural deficiencies. Rather, this case involves an individual student's IEP."); *Yamen by Yamen v. Bd. of Educ. of the Arlington Cent. Sch. Dist.*, 909 F. Supp. 207, 210-11 (S.D.N.Y. 1996) (distinguishing cases where a plaintiff seeks relief only with respect to a single student with Second Circuit precedent recognizing the ability of class-action plaintiffs to bring claims concerning systemic violations).

It is clear that the scope of the IDEA action against the District remains limited to its alleged failure to provide a FAPE to V.G. (*See generally* Dkt. No. 22, Attach. 2.) M.F. seeks relief only on behalf of her son based on the District's failure to offer him a FAPE. (*Id.* ¶ 10). The proposed amended complaint does not plausibly allege that the District caused harm to *other* disabled students. (*Id.* at 40-42.) Thus, despite being labeled as a "systemic" claim, plaintiff's new IDEA claim against the District remains, in essence, a § 1415 claim under the IDEA. Accordingly, the same reasons requiring dismissal of M.F.'s original IDEA claim against the District would apply with equal force to this IDEA claim. As such, this portion of M.F.'s motion is denied as futile. *See Vance*, 802 F.3d at 389;

*Lucente*, 310 F.3d at 258; *Hyatt*, 2018 WL 4473389, at *4, *5-7.

         *c.*     *Systemic Violation Claim against SED*

Contrary to the crux of SED's arguments that it is still an improper party to M.F.'s IDEA claim because the scope of the action is limited to the District's alleged failure to provide V.G. a FAPE, (Dkt. No. 26 at 4-6), M.F.'s proposed amendments adequately state a systemic violation claim against SED. That is, M.F. alleges that

> []SED created and enforces policies that prohibit parents appealing due process decisions before the SRO from challenging the record on appeal produced by school districts and there is no uniform standard for what records on appeal should look like, how parent's exhibits or district's exhibits should be labeled, or how what the copy the district serves on the parent should look like [and] provide[s] no avenue for parents to challenge the sufficiency of records on appeal produced by [the District.]

(Dkt. No. 22, Attach. 2 ¶ 109.) Further, M.F. alleges that she "challenged the record presented by [the District]," but was "denied the ability to supplement the record on appeal []or clarify how exhibits were labeled." (*Id.* ¶ 110.) As such, M.F. alleges that she suffered an injury insofar as she was "left at a disadvantage in that [the] District produced a record that [she] could not cite to and was incomplete and in favor of [the District]'s

position." (*Id.*)

To be sure, the court is skeptical of this claim's viability given that M.F. concedes that she was able to make a motion to supplement the record in the administrative hearing and the SRO "ordered [the District] to submit additional documents." (*Id.* ¶ 112.) However, SED fails to convince the court that this claim could not withstand a motion to dismiss as a result. *See Kalliope R.*, 827 F. Supp. 2d at 141 n.3 (finding SED was proper defendant where plaintiff alleged SED affirmatively promulgated policy "that allegedly interferes with the IEP development process for disabled students in a systemic manner"); *Quatroche v. E. Lyme Bd. of Educ.,* 604 F. Supp. 2d 403, 412 (D. Conn. 2009) ("The state education agency is a proper party to actions involving claims of systemic violations of the IDEA[.]"); *see also Jose P. v. Ambach*, 669 F.2d 865, 870-71 (2d Cir. 1982) (noting state education commissioner could be proper defendant in suit under predecessor statute to IDEA alleging procedural deficiencies in system for evaluating and placing disabled children). The court notes that this claim hangs on by a thread, but the issue ultimately requires further elucidation by SED—perhaps in a more specific motion to dismiss. Accordingly, because SED has not sufficiently demonstrated that it would

be futile, this portion of M.F.'s motion for leave to amend is granted.

### d. Section 1983 Claims against SED

A § 1983 claim requires a plaintiff to show the deprivation of a right, privilege, or immunity secured by the Constitution and its laws by a person acting under the color of state law. 42 U.S.C. § 1983. It is well-settled that states and state agencies are not "persons" subject to suit under § 1983. *See Will v. Mich. Dep't of State Police*, 491 U.S. 58, 65-66 (1989). Furthermore, "New York has not consented to § 1983 suits in federal court." *Mamot v. Bd. of Regents*, 367 F. App'x 191, 192 (2d Cir. 2010). Accordingly, this portion of M.F.'s motion is denied as futile. *See Vance*, 802 F.3d at 389; *Lucente*, 310 F.3d at 258; *Hyatt*, 2018 WL 4473389, at *4, *5-7 .

### e. Section 1983 Claims against the District

The viability of the § 1983 claims against the District is a closer call. To be sure, M.F.'s proposed § 1983 allegations against the District, (Dkt. No. 22, Attach. 2 ¶¶ 170-73), are vague and conclusory. *See Proffitt v. Village of Deposit*, 3:15-cv-750, 2018 WL 1157940, at *3 n.4 (N.D.N.Y. Mar. 12, 2018) ("When plaintiffs are represented by legal counsel, neither

the court nor defendants should have to engage in guesswork to address every possible legal theory of a constitutional violation that is not clearly delineated in their complaint."). Additionally, a plaintiff cannot use § 1983 to circumvent IDEA exhaustion requirements where the relief sought was available to them through the administrative review process. *See Streck*, 280 F. App'x at 68; *see also French v. N.Y. State Dep't of Educ.*, 476 F. App'x 468, 473 (2d Cir. 2011) (affirming dismissal of § 1983 claim where "it lack[ed] any factual basis other than the alleged IDEA violations and the related allegation of discrimination"). However, contrary to the District's contention that the proposed amended complaint "contains no factual allegations identifying any inappropriate policies, patterns, practices, or customs of the District" and "the only facts that are pled pertain to V.G's individual special education program and the adequacy of that program to meet his individual needs," (Dkt. No. 25 at 21), there are sufficient allegations outside of the District's alleged denial of a FAPE that could state a § 1983 claim. (*See, e.g.*, Compl. ¶¶ 65-66, 73-75, 87-88, 91, 94-97, 103.) Given that other claims against the District survive based on these allegations that involve conduct outside the scope of the IDEA, the court is not convinced that M.F.'s proposed § 1983 claim against the

District would be futile.  Again, this is a close call that should be revisited.

### f.    Remaining Allegations

Finally, the additional factual allegations sought to be added by M.F. would not ameliorate the substantive issues affecting any of the claims from the original complaint that the court has determined should be dismissed.  *See Cuoco v. Moritsugu*, 222 F.3d 99, 112 (2d Cir. 2000) (holding that where "[t]he problem with [plaintiff]'s causes of action is substantive . . . better pleading will not cure it").  As such, to the extent that M.F. attempts to save any of her previously dismissed claims based on the proposed factual amendments to her complaint, this portion of M.F.'s motion is denied as futile.  *See Vance*, 802 F.3d at 389; *Lucente*, 310 F.3d at 258; *Hyatt*, 2018 WL 4473389, at \*4, \*5-7 .

## V.  <u>Conclusion</u>

**WHEREFORE**, for the foregoing reasons, it is hereby

**ORDERED** that SED's motion to dismiss (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that the Clerk is directed to terminate SED as a party to this action; and it is further

**ORDERED** that the District and Speach's motion for a judgment on the pleadings (Dkt. No. 15) is **GRANTED IN PART AND DENIED IN PART** as follows:

**DENIED** with respect to M.F.'s Section 504 claim against the District; and

**GRANTED** in all other respects; and it is further

**ORDERED** that the Clerk is directed to terminate Speach as a party to this action; and it is further

**ORDERED** that M.F.'s motion for leave to file an amended complaint (Dkt. No. 22) is **GRANTED IN PART AND DENIED IN PART** as follows:

**GRANTED** insofar as it seeks to add a § 1983 claim against the District and a systemic violation of the IDEA claim against SED; and

**DENIED** in all other respects; and it is further

**ORDERED** that M.F. shall timely file and serve the original signed amended pleading as set forth in Local Rule 7.1(a)(4), should M.F. fail to do so, the complaint, as modified by this Memorandum-Decision and Order, will remain the operative pleading; and it is further

**ORDERED** that defendants shall file a responsive pleading or renew their motion to dismiss within the time allotted under the Rules; and it is further

**ORDERED** that the Clerk provide a copy of this Memorandum-Decision and Order to the parties.

**IT IS SO ORDERED.**

March 29, 2019
Albany, New York

Gary L. Sharpe
U.S. District Judge